<u>ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED</u>

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

No. 13-7093

———————

MICHAEL H. HOLLAND, et al., as TRUSTEES OF THE UNITED
MINE WORKERS OF AMERICA 1992 BENEFIT PLAN
Appellees

v.

BIBEAU CONSTRUCTION COMPANY, INC.
Appellant

—————————————————————

On Appeal from the United States District
Court for the District of Columbia

—————————————————————

**BRIEF FOR APPELLEES**

David W. Allen, General Counsel
Larry D. Newsome, Associate General Counsel
Kathleen B. Burns, Assistant General Counsel
UMWA Health and Retirement Funds
2121 K Street, N.W.
Washington, D.C. 20037
(202) 521-2233
kburns@umwafunds.org

Counsel for Appellees

## CERTIFICATE AS TO PARTIES, RULINGS
## AND RELATED CASES

A.  Parties

1.  The following parties appeared before the United States District

Court for the District of Columbia:

   a.  Plaintiffs.

Michael H. Holland, Micheal W. Buckner, A. Frank Dunham, and

Elliott A. Segal, as Trustees of the United Mine Workers of America

1992 Benefit Plan

   b.  Defendants.

Valley Services, Inc.

Bibeau Construction Company, Inc.

2.  The following parties are parties in the above captioned action in

this court:

   a.  Appellees.

Michael H. Holland, Carlo Tarley, Michael O. McKown, and Daniel

R. Jack as Trustees of the United Mine Workers of America 1992

Benefit Plan.  On January 13, 2014 Appellees, filed a Substitution of

i

Parties notifying this Court that Trustee Paul B. Piccolini has been replaced by Trustee Daniel R. Jack.

b. Appellants.

Bibeau Construction Company, Inc.

c. There have been no intervenors or *amici* in this case.

B. Rulings Under Review.

1. Order and Memorandum Opinion filed May 7, 2009, District Court Judge Ricardo M. Urbina; *Michael Holland, et al., v. Valley Services, Inc., et al.,* 612 F. Supp. 2d 75 (D.D.C. 2009), *reconsideration granted at* 845 F. Supp. 2d 220 (D.D.C. 2012). JA 209-219.

2. Order and Memorandum Opinion filed February 28, 2012, District Court Judge Ricardo M. Urbina; *Michael H. Holland, et al., v. Valley Services, Inc., et al.,* 845 F. Supp. 2d 220 (D.D.C. 2012). JA 220-226.

3. Order Awarding Damages filed on May 23, 2013, District Court Judge Emmet G. Sullivan. JA 252-253.

C. Related Cases.

None.

ii

## TABLE OF CONTENTS

**PAGE**

Certificate as to Parties, Rulings and Related Cases............................i

Table of Contents ..........................................................................iii

Table of Authorities .......................................................................v

Glossary.........................................................................................ix

Issues Presented for Review.............................................................1

Pertinent Statutes ..........................................................................2

Statement of the Case ....................................................................6

Summary of Argument ...................................................................13

Argument .....................................................................................14

   I. The District Court Correctly Held that the Plan's Claim was
      Timely Filed and that the Equitable Doctrine of Laches is
      Not a Defense Available to Bibeau......................................14

      A. The Plan's claim was timely filed.....................................14

      B. The equitable doctrine of laches is not a defense to Coal
         Act obligations...............................................................16

      C. The "as soon as practicable" laches dictum found in *Bay Area
         Laundry* does not apply to actions under the Coal Act...........18

      D. The elements of a laches defense are not met by the facts
         of this case....................................................................20

         1. The length of time it took the Plan to discover Bibeau

was a related person to Valley Services was reasonable
under the circumstances……………………………………………21

2. Bibeau was not prejudiced by the Plan's filing of the
lawsuit and collection of premiums back to
February 2000…………………………………………………………28

    a. The Plan's actions did not prejudice Bibeau with
regard to the disability determination that rendered
the beneficiary eligible for the Plan…………………………29

    b. The Coal Act's retroactive nature was intended
by Congress……………………………………………..…………31

II. The District Court Properly Found that the Plan is Entitled
to Statutory Interest and Liquidated Damages for the Entire
Period for which the Plan Was Awarded Delinquent
Premiums……………………………………………………………………33

    A. The Plan is entitled to interest for periods prior to
December 6, 2004…………………………………………………..…33

    B. The Plan is entitled to liquidated damages on all unpaid
contributions……………………………………………………………36

Conclusion……………………………………………………………………37

Statement Regarding Oral Argument…………………………………37

Certificate of Compliance

Certificate of Filing and Service

## TABLE OF AUTHORITIES

**CASES**                                             **PAGE(S)**

*Bay Area Laundry & Dry Cleaning Pension
Trust Fund v. Ferbar Corp. of Calif., Inc.,
522 U.S. 192 (1997)..................................................14, 15, 18, 19, 20

Combs v. Western Coal Corp.,
611 F. Supp. 917 (D.D.C. 1985)........................................................17

*Connors v. Beth Energy Mines, Inc.,
920 F.2d 205 (3rd Cir. 1990)............................................................34

Connors v. HI-Heat Coal Co., Inc.,
772 F. Supp. 1 (D.D.C. 1991)...........................................................17

Costello v. U.S.,
365 U.S. 265 (1961)..................................................................20, 21

Eastern Enterprises v. Apfel,
524 U.S. 498 (1998).......................................................................6

*Harris v. Holland,
32 EBC 2969 (4th Cir. 2004).............................................................30

*Holland v. North Star Contractors, Inc.,
Civ.No. 2:06-cv-00692
2008 U.S. Dist. LEXIS 108684
(S.D.W.Va. Mar. 12, 2008)...........................................................15

*Holmberg v. Armbrecht,
327 U.S. 392 (1946)..................................................................16, 17

*Authorities upon which we chiefly rely are marked with asterisks.

*Huber v. Casablanca Industries, Inc.,*
916 F.2d 85 (3rd Cir. 1990)..................................................35

*ITP-MEBA/NMU Funds v.*
*United International Investigative Services,*
13 EBC 2538 (D.D.C. 1991)...............................................36

*\*Lyons Partnership, L.P. v. Morris Costumes, Inc.,*
243 F.3d 789 (4th Cir. 2001)..............................................17

*\*McCoy v. Holland,*
366 F.3d 166 (4th Cir. 2004)..........................................29, 30

*Massachusetts Mutual Life Ins., Co. et al., v. Russell,*
473 U.S. 134 (1985)..........................................................31

*Penn Allegh Coal Co., Inc. v. Holland,*
83 F.3d 860 (D.C. Cir. 1999)...............................................6

*Shrader v. Harman Mining Corp.,*
961 F. Supp. 137 (W.D. W.Va. 1997).................................30

*Saffron v. Dep't of the Navy,*
561 F.2d 939 (D.C.Cir. 1977)............................................17

*United Retail and Wholesale Employees*
*Pension Fund v. Yahn and McDonnell, Inc.,*
787 F.2d 128 (3rd Cir. 1986)............................................34

*U.S. v. Mack,*
295 U.S. 480 (1935)......................................................16, 17

## STATUTES

26 U.S.C. § 52(a)..........................................................25, 32

26 U.S.C. § 1563(a)..........................................................25

26 U.S.C. § 1563(a)(2)......................................................................25

26 U.S.C. § 1563(e)(5)......................................................................11

26 U.S.C. § 9701.........................................................................2, 6, 7

26 U.S.C. § 9701(c)(1)...................................................................2, 25

26 U.S.C. § 9701(c)(2)(A)(i)......................................................2, 25, 32

26 U.S.C. § 9701(c)(2)(B)................................................................2, 32

26 U.S.C. § 9701(c)(4)....................................................................2, 10

26 U.S.C. § 9712(a)(1)......................................................................18

26 U.S.C. § 9712(b)(2)(A)...............................................................2, 10

26 U.S.C. § 9712(c)(1)........................................................................7

26 U.S.C. § 9712(d)............................................................................3

26 U.S.C. § 9712(d)(1)........................................................................3

26 U.S.C. § 9712(d)(3).........................................................3, 7, 15, 19

26 U.S.C. § 9712(d)(4).........................................................3, 7, 11, 25

26 U.S.C. § 9721..........................................................................4, 13, 14

29 U.S.C. § 1002(3) (ERISA § 3(3))......................................................7

29 U.S.C. § 1002(37) (ERISA § 3(37))...................................................7

29 U.S.C. § 1132(g)(2) (ERISA § 502(g)(2))...........4, 7, 13, 14, 33, 34, 35

29 U.S.C. § 1132(g)(2)(A)-(B) (ERISA § 502(g)(2)(A)-(B))...................34

29 U.S.C. § 1132(g)(2)(B) (ERISA § 502(g)(2)(B))........................1, 4, 35

29 U.S.C. §1132(g)(2)(C) (ERISA § 502(g)(2)(C))........................1, 4, 36

29 U.S.C. §1132(g)(2)(C)(i) (ERISA § 502(g)(2)(C)(i))......................4, 36

29 U.S.C. §1132(g)(2)(C)(ii) (ERISA § 502(g)(2)(C)(ii)).....................4, 36

29 U.S.C. § 1132(g)(2)(E) (ERISA § 502(g)(2)(E)).............................5

29 U.S.C. § 1145 (ERISA § 515)...............................................4, 33

29 U.S.C. § 1399 (ERISA § 1401)..............................................18, 20

29 U.S.C. § 1399(b) (ERISA § 1401(b))........................................5

29 U.S.C. § 1399(c)(1) (ERISA § 1401(c)(1))..................................35

29 U.S.C. § 1451 (ERISA § 4301)..................................5, 13, 14, 17

29 U.S.C. § 1451(f)(1) (ERISA § 4301(f)(1))............................5, 13, 14

# GLOSSARY

| | |
|---|---|
| Coal Act | Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701-9722 |
| ERISA | Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* |
| MSHA | Mine Safety and Health Administration |
| MPPAA | Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381 *et seq.* |
| NBCWA | National Bituminous Coal Wage Agreement |
| Plan | United Mine Workers of America 1992 Benefit Plan |
| SSA | Social Security Administration |
| Trustees | Trustees of the United Mine Worker of America 1992 Benefit Plan |
| UMWA | United Mine Workers of America |

ix

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court correctly held that Bibeau could not use the equitable defense of laches to a suit brought under the Coal Act, which provides for a statute of limitations.

2. Whether the district court correctly imposed interest on all of the unpaid premiums as required by Section § 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B).

3. Whether the district court correctly imposed liquidated damages as required by Section § 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C).

1

## PERTINENT STATUTES

**26 U.S.C. § 9701. Definitions of general applicability.**

(c) Terms relating to operators.  For purposes of this section--

    (1) Signatory operator. The term "signatory operator" means a person which is or was signatory to a coal wage agreement.

    (2) Related Persons.
        (A) In general. A person shall be considered to be a related person to a signatory operator if that person is—
            (i) a member of the controlled group of corporations (within the meaning of section 52(a) [26 USCS § 52(a)] which includes such signatory operator;
                **********
        (B) Time for determination. The relationship described in clauses (i), (ii), and (iii) of subparagraph (A) shall be determined as of July 20, 1992, except that if, on July 20, 1992, a signatory operator is no longer in business, the relationship shall be determined as of the time immediately before such operator ceased to be in business.
                **********
    (4) Last signatory operator. The term "last signatory operator" means, with respect to a coal industry retiree, a signatory operator which was the most recent coal industry employer of such retiree.

**26 U.S.C. § 9712. Establishment and coverage of the 1992 UMWA Benefit Plan**

(b) Coverage Requirement.

    (2) Eligible beneficiary.  For purposes of this section, the term "eligible beneficiary" means an individual who—
        (A) but for the enactment of this chapter [*26 USCS §§ 9701* et seq.], would be eligible to receive benefits from the 1950 UMWA Benefit Plan or the 1974 UMWA Benefit Plan, based upon age and service earned as of February 1, 1993; or

2

(B) with respect to whom coverage is required to be provided under section 9711 [*26 USCS § 9711*], but who does not receive such coverage from the applicable last signatory operator or any related person,

and any individual who is eligible for benefits by reason of a relationship to an individual described in subparagraph (A) or (B). In no event shall the 1992 UMWA Benefit Plan provide health benefits coverage to any eligible beneficiary who is a coal industry retiree who retired from the coal industry after September 30, 1994, or any beneficiary of such individual.

**********

(d) Guarantee of benefits.

(1) In general.  All 1988 last signatory operators shall be responsible for financing the benefits described in subsection (c) by meeting the following requirements in accordance with the contribution requirements established in the 1992 UMWA Benefit Plan:

(A) The payment of a monthly per beneficiary premium by each 1988 last signatory operator for each eligible beneficiary of such operator who is described in subsection (b)(2) and who is receiving benefits under the 1992 UMWA Benefit Plan.

**********

(3) Additional liability.  Any last signatory operator who is not a 1988 last signatory operator shall pay the monthly per beneficiary premium under paragraph (1)(A) for each eligible beneficiary described in such paragraph attributable to that operator.

(4) Joint and several liability.  A 1988 last signatory operator or last signatory operator described in paragraph (3), and any related person to any such operator, shall be jointly and severally liable with such operator for any amount required to be paid by such operator under this section. The provisions of section 9711(c)(2) [*26 USCS § 9711(c)(2)*] shall apply to any last signatory operator described in such section (without regard to whether security is provided under such section, a payment is made under section 9704(j) [*26 USCS § 9704(j)*], or both) and if security meeting the requirements of section 9711(c)(3) [*26 USCS § 9711(c)(3)*] is provided, the common parent described in section 9711(c)(2)(B) [*26 USCS § 9711(c)(2)(B)*] shall be

3

exclusively responsible for any liability for premiums under this section which, but for this sentence, would be required to be paid by the last signatory operator or any related person.

## 26 U.S.C. § 9721 Civil Enforcement.

The provisions of section 4301 of the Employee Retirement Income Security Act of 1974 [*29 USCS § 1451*] shall apply, in the same manner as any claim arising out of an obligation to pay withdrawal liability under subtitle E of title IV of such Act, to any claim--

  (1) arising out of an obligation to pay any amount required to be paid by this chapter [*26 USCS §§ 9701* et seq.]; or

**********

## 29 U.S.C. § 1145 Delinquent contributions

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

## 29 U.S.C. § 1132 Civil enforcement

(g) Attorney's fees and costs; awards in actions involving delinquent contributions.

**********

  (2) In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [*29 USCS § 1145*] in which a judgment in favor of the plan is awarded, the court shall award the plan--

    (A) the unpaid contributions,

    (B) interest on the unpaid contributions,

    (C) an amount equal to the greater of--

      (i) interest on the unpaid contributions, or

      (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

   (E) such other legal or equitable relief as the court deems
   appropriate.
For purposes of this paragraph, interest on unpaid contributions
shall be determined by using the rate provided under the plan, or, if
none, the rate prescribed under *section 6621 of the Internal Revenue
Code of 1986* [*26 USCS § 6621*].

## 29 U.S.C. § 1399.  Notice, collection, etc., of withdrawal liability

(b) Notification, demand for payment, and review upon complete or
partial withdrawal by employer.
   (1) As soon as practicable after an employer's complete or partial
   withdrawal, the plan sponsor shall--
      (A) notify the employer of--
         (i) the amount of the liability, and
         (ii) the schedule for liability payments, and
      (B) demand payment in accordance with the schedule.

## 29 U.S.C. § 1451 Civil Actions

(a) Persons entitled to maintain actions.
   (1) A plan fiduciary, employer, plan participant, or beneficiary, who
   is adversely affected by the act or omission of any party under this
   subtitle [*29 USCS §§ 1381* et seq.] with respect to a multiemployer
   plan, or an employee organization which represents such a plan
   participant or beneficiary for purposes of collective bargaining, may
   bring an action for appropriate legal or equitable relief, or both.
                              **********
(f) Time limitations.  An action under this section may not be brought
after the later of--
   (1) 6 years after the date on which the cause of action arose, or
(2) 3 years after the earliest date on which the plaintiff acquired or
should have acquired actual knowledge of the existence of such cause of
action; except that in the case of fraud or concealment, such action may
be brought not later than 6 years after the date of discovery of the
existence of such cause of action.

## STATEMENT OF THE CASE

The Trustees of the United Mine Workers of America ("UMWA")

1992 Benefit Plan ("Plan" or "1992 Plan") brought this action to compel

Bibeau Construction Company, Inc. ("Bibeau" or "Bibeau Construction")

to comply with its obligations under the Coal Industry Retiree Health

Benefit Act of 1992 ("Coal Act"), 26 U.S.C. §§ 9701 *et seq.* Congress

passed the Coal Act in 1992 in response to a crisis in funding health

benefits that were promised to retirees in collective bargaining

agreements. Congress modified the private health benefit plans "to

identify persons most responsible for plan liabilities in order to stabilize

plan funding and allow for the provision of health care benefits to such

retirees." 26 U.S.C. § 9701 note (Findings and Declaration of Policy)

(quoting § 19142 of Pub. L. No. 102-486). This would further the policy

"to provide for the continuation of a privately financed self-sufficient

program for the delivery of health care benefits to the beneficiaries of

such plans." *Id.* Many courts, including this Court, have detailed the

history of the Coal Act. *See Eastern Enterprises v. Apfel*, 524 U.S. 498,

504-515 (1998); *Penn Allegh Coal Co., Inc. v. Holland*, 183 F.3d 860,

861-862 (D.D.Cir. 1999).

6

The Plan, established pursuant to the Coal Act, is a multi-employer benefit plan under the Employee Retirement Income Security Act ("ERISA"), Section 3(3), 29 U.S.C. § 1002(3), and a multi-employer plan within the meaning of ERISA Section 3(37), 29 U.S.C. § 1002(37). Its purpose is to provide lifetime health benefits to eligible coal miners who retired or became disabled prior to October 1, 1994 and whose last operator employers, who were signatory to NBCWAs since 1978, do not provide the health care benefits required by the NBCWAs. 26 U.S.C. § 9712(c)(1). As part of the funding for the Plan's benefits, the Coal Act imposes, a monthly premium obligation upon the last signatory operator, if such an operator remains in business. 26 U.S.C. § 9712(d)(3); 26 U.S. C. § 9701(c)(1). Further, the Coal Act states that related persons to last signatory operators, as defined in Section 9701, shall be jointly and severally liable for any monthly premiums owed by such operators to the Plan. 26 U.S.C. § 9712(d)(4).

In 2004, the Plan first learned of the existence of Bibeau as a possible related person to Valley Services, the last signatory operator of one of its beneficiaries. JA 151, 157, 192-202. Bibeau failed to provide requested information showing, if it could, that it was not a related

7

person.  On February 1, 2006, the Plan filed a complaint in the United States District Court for the District of Columbia, alleging Bibeau was a related person to Valley Services.  JA 9.  The Plan alleged that Bibeau was statutorily liable for monthly premiums owed to the Plan under the Coal Act.  JA 11.  In its Answer to the Complaint, Bibeau denied that it was a related person, but after disclosing facts concerning its corporate ownership in discovery it admitted its related person status.  JA 15, 20-21, 70.

The parties filed cross motions for summary judgment in September 2007.  The district court issued a Memorandum Opinion and Order on May 7, 2009, in which the Plan's motion for summary judgment was granted in part and denied in part and Bibeau's motion for summary judgment was granted in part and denied in part.  JA 209-219.  The court held that the defense of laches was unavailable to Bibeau and that Bibeau was liable to the Plan for payments of monthly premiums that accrued on or after May 15, 2001.  JA 216-218.  Further briefing on damages was also ordered. JA 209.

The court granted the Plan's motion to alter or amend the judgment on February 28, 2012 and issued a Memorandum Opinion and Order on

8

February 28, 2012, which held that Bibeau was liable to the Plan for monthly premiums that accrued on or after February 1, 2000. JA 220-226. Further briefing on damages was also ordered. JA 220.

In April 2012, this case was reassigned from District Court Judge Urbina to District Court Judge Sullivan. JA 7. A hearing on the parties' damages briefs was held on May 21, 2013. JA 7-8. The court entered an Order on May 23, 2013, awarding the Plan judgment for the unpaid monthly premiums that accrued from February 1, 2000 to March 15, 2012, interest, liquidated damages, and attorney's fees and costs for a total of $241,227.21. JA 252. Further it was ordered that Bibeau also pay all unpaid premiums that accrue after March 15, 2012. *Id.* Bibeau's Notice of Appeal was filed on June 17, 2013. JA 254.

The UMWA 1974 Pension Plan determined that, while working as a union classified employee for Valley Services, Arthur Marcum, Jr., was injured in a mine accident. JA 103-105. On September 25, 1979, while operating a dozer, the long wall of the mine fell in on him forcing him to jump off of the dozer. JA 104. In 1991, as required by the NBCWA as a prerequisite to an award of a disability pension from the 1974 Pension Plan, Mr. Marcum received a determination of disability from the Social

Security Administration (SSA). JA 121, 131. He applied for a disability pension from the 1974 Pension Plan in July 1994. JA 130. Also pursuant to the NBCWA, the Pension Plan's staff of health care professionals reviewed medical records and determined that there was a causal link between the 1979 mine accident and the disability determined by SSA. JA 103-105. Based on this determination, Mr. Marcum was awarded a disability pension with an effective date of September 1, 1988. JA 103-105, 121. In October 1994 Mr. Marcum applied for health benefits from the Plan. JA 160-161.

Since Mr. Marcum was not receiving health benefits from Valley Services, as that company was defunct, the Plan determined in April 1995, that he met the eligibility criteria of the Plan and that he and his dependants were eligible to receive health care benefits from the Plan retroactive to February 1, 1993. *See* 26 U.S.C. § 9712(b)(2)(A); JA 122. The Plan determined that Valley Services was the mineworker's last signatory operator within the meaning of the Coal Act. 26 U.S.C. § 9701 (c)(4).

Valley Services was an Ohio corporation registered to do business in West Virginia. JA 20. Ovila L. Bibeau ("Mr. Bibeau") and Dorothy S.

10

(Bibeau) Kilbourne ("Ms. (Bibeau) Kilbourne"), husband and wife, became the owners in 1975.[1]  *Id.*  Valley Services was a coal mining company that was signatory to the 1978 National Bituminous Coal Wage Agreement ("NBCWA").  JA 138-140.  It ceased operations and dissolved in November 1979.  JA 109.

Bibeau incorporated in New York in August 1967.  JA 192-194.  It has operated as a construction company from the time of its incorporation through the present day.  JA 107.  It is a privately held company owned entirely by Mr. Bibeau.  JA 21.  Mr. Bibeau owned 100% of both Bibeau and Valley Services at the time immediately prior to Valley Services' going out of business in November 1979.  JA 20-21.

The Coat Act requires Valley Services and any related person to Valley Services to pay premiums to the Plan. 26 U.S.C. § 9712 (d)(4). While the Plan knew that the disabled coal miner was being enrolled in the Plan in April 1995 and that Valley Services had been out of business since November 1979, it did not know that Bibeau was a

---

[1] Pursuant to the Internal Revenue Code as it relates to constructive ownership, any shares of Valley Services owned by Ms. (Bibeau) Kilbourne are considered to be owned by her spouse, Mr. Bibeau. Therefore, Mr. Bibeau owned 100% of Valley Services in November 1979. 26 U.S.C. § 1563(e)(5).

related person. JA 122, 109. The Plan discovered information in December 2004 that led it to believe that there was a likelihood that Bibeau was a related person to Valley Services. JA 128-127. On December 6, 2004 the Plan made an initial demand of Bibeau for payment, but qualified the demand by requesting that Bibeau provide the Plan with any information it might have that demonstrated that it was not related to Valley Services. JA 151.

Throughout the next calendar year, the Plan engaged in numerous discussions with Bibeau's counsel, and supplied Bibeau's counsel with extensive documentary information regarding Mr. Marcum's disability pension determination and the facts that the Plan had uncovered that led it to believe that Bibeau was a related person to Valley Services. JA 190. Bibeau did not provide the Plan with information regarding its relationship to Valley Services prior to the filing of this action. *Id.* It denied its relationship to Valley Services in its Answer to the complaint. JA 15. During the discovery phase of this action, in April and May 2007, Bibeau for the first time provided the information, that conclusively showed that it is a related person to Valley Services. JA 20-21.

## SUMMARY OF ARGUMENT

The district court was correct in holding that Bibeau could not assert the equitable doctrine of laches as a defense. JA 218. This holding was consistent with the statutory framework for enforcing civil actions under the Coal Act, as Congress mandated that the six year statute of limitations found in Section 4301(f)(1) of ERISA, 29 U.S.C. § 1451(f)(1), apply to actions brought under the Coal Act. 26 U.S.C. § 9721.

In the event that this Court finds that the district court should have permitted Bibeau to assert laches as a defense, Bibeau has not alleged or established sufficient facts to meet the elements of the defense. Bibeau has not proved that the Plan was not diligent in researching whether a related person to Valley Services existed, nor has Bibeau proved that it suffered prejudice.

The Plan is entitled to the interest and the liquidated damages ordered by the district court. JA 252. The award of interest and liquidated damages on the award of all unpaid contributions is not discretionary. 29 U.S.C. § 1132(g)(2). The district court properly ordered Bibeau to pay to the Plan interest owed on the monthly per-beneficiary premiums for the period February 15, 2000 through March

13

15, 2012. JA 252. Likewise the district court was correct in ordering Bibeau to pay liquidated damages in an amount equal to the unpaid interest. *Id.*

## ARGUMENT

**I. The District Court Correctly Held that the Plan's Claim was Timely Filed and that the Equitable Doctrine of Laches is Not a Defense Available to Bibeau.**

### A. The Plan's claim was timely filed.

Section 9721 of the Coal Act, 26 U.S.C. § 9721, directs the Plan to use ERISA's civil enforcement provision found at Section 4301, 29 U.S.C. § 1451. Section 4301(f)(1) of ERISA, 29 U.S.C. § 1451(f)(1), provides for a six year statute of limitations period. The Supreme Court has held that in actions brought under 29 U.S.C. § 1451, "a new cause of action, carrying its own limitations period, arises from the date each payment is missed." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif., Inc.*, 522 U.S. 192, 194 (1997). As such, the payments to the pension plan pursuant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") in *Bay Area Laundry* came due each month and the Supreme Court found that each monthly payment gave rise to its own statute of limitations period. *Id.* at 206.

14

The cause of action for these withdrawal liability payments accrued under MPPAA when the plan calculated the installment schedule, demanded payment and the employer failed to make those payments.

In contrast to MPPAA, the Coal Act's premiums obligation is self-executing because "accrual of a cause of action under the Coal Act does not require the Trustees to set an installment schedule and demand payment. . . ." *Holland v. North Star Contractors, Inc.*, Civ. No. 2:06-cv-00692, 2008 U.S. Dist. LEXIS 108684, 12 (S.D.W.Va. Mar. 12, 2008). The Coal Act states that a signatory operator or related person shall be responsible for payment of the premiums when an eligible beneficiary is enrolled in the plan. *See* 26 U.S.C. § 9712(d)(3). Thus, the premiums become due upon enrollment, and a cause of action under the Coal Act arises each month that a premium becomes due to the Plan. In this case, the district court applied the language of the Coal Act, and Supreme Court precedent, as well as the decision in *Holland v. North Star Contractors, Inc.*, when it applied the six year statute of limitations mandated by the Coal Act and noted that the monthly premiums for which Bibeau is liable are not subject to a single statute of limitations. JA 225-226. It properly followed the holding in *Bay Area Laundry* that

15

"each missed payment creates a separate cause of action with its own six-year limitations period." JA 225.  Applying the Supreme Court's analysis, the district court counted backwards from the filing of the complaint (February 1, 2006), and held that the complaint was timely filed as to all premiums that came due within six years of the filing of the complaint.  JA 226.

**B.  The equitable doctrine of laches is not a defense to Coal Act obligations.**

It is well established that the equitable doctrine of laches is not an available defense to an action in which there is a statutorily imposed statute of limitations.  JA 218.  The Supreme Court held in *Holmberg v. Armbrecht,* that "[i]f Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitations is definitive."  327 U.S. 392, 395 (1946); s*ee also U.S. v. Mack*, 295 U.S. 480, 489 (1935).   It is only in matters where there is no statute of limitations imposed by Congress, that the court needs to contemplate the implications of the timing of the commencement of an action.  *Id.* at 395.

The Fourth Circuit has held that the judicially created doctrine of laches cannot be invoked where Congress has established a statute of

16

limitations governing a cause of action.  *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789 (4th Cir. 2001).  The court noted that ". . . a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute." *Id.* at 798.  It went on to state that "Thus, when Congress creates a cause of action and provides both legal and equitable remedies, its statute of limitations for that cause of action should govern, regardless of the remedy sought." *Id.*

The district court correctly found that because of the statute of limitations imposed by Congress in the Coal Act, Bibeau could not claim the defense of laches.  JA 218; *citing U.S. v. Mack,* 295 U.S. 480, 489 (1935); *Holmberg v. Armbrecht,* 327 U.S. 392, 395 (1946); *Saffron v. Dep't of the Navy,* 561 F.2d 938, 941 (D.C. Cir. 1977); *Connors v. HI-Heat Coal Company, Inc.*, 772 F. Supp 1, 1 n. 1 (D. D.C. 1991); *Combs v. Western Coal Corporation*, 611 F. Supp. 917, 920 (D.D.C. 1985).  The six year statute of limitations found in Section 4301 of ERISA, 29 U.S.C. § 1451, is definitive.

17

## C. The "as soon as practicable" laches dictum found in *Bay Area Laundry* does not apply to actions under the Coal Act.

Unlike MPPAA, under which a pension plan's notice and demand to a withdrawing employer and the employer's failure to pay gives rise to a cause of action, the Coal Act does not place any "as soon as practicable" obligation for a notice or demand to be issued by the Plan to an operator or its related person who owes premiums.  Rather the Coal Act indicates in Section 9712(a)(1) that the trustees of the Plan are responsible for the administration of the terms of the Plan.  26 U.S.C. § 9712(a)(1).  JA 90-91.  If Congress had intended for the Coal Act to use the statutory framework of 29 U.S.C. § 1399, where the "as soon as practicable" language appears, for notification of employers who owe premiums to the Plan, it was aware of this provision and would have explicitly done so.

The Supreme Court in *Bay Area Laundry* suggested in dictum that laches may be used as a defense in a MPPAA withdrawal liability case to substantiate an employer's claim that a pension plan did not calculate and demand withdrawal liability "as soon as practicable" as required by MPPAA. *Bay Area Laundry*, 522 U.S. at 205.  *See* Bibeau's Brief at 22-23.  Because this laches defense is tied to the "as soon as

18

practicable" provision, the absence of this provision from the Coal Act is fatal to Bibeau's argument based upon it. The "as soon as practicable" standard was included in MPPAA because a pension plan must establish the cause of action against an employer known to have withdrawn from the plan by calculating the liability, providing notice and making a demand, thereby triggering the running of the statute of limitations upon failure of the employer to make scheduled payments.

Under the Coal Act, the debt begins to accrue when a beneficiary is enrolled in the Plan.[2] 26 U.S.C. § 9712(d)(3). The absence of a time frame for identifying related persons and demanding payment from them is in keeping with the broad policy of the Coal Act and the fact, evident from this case, that often the Plan would not know that such related persons even exist. Unlike the employers in the *Bay Area Laundry* case, who were known to the pension plan and known to have withdrawn from it, the 1992 Plan did not know of the existence of Bibeau until 2004, and even then Bibeau failed to disclose its related

---

[2] Annually, the Plan provides a statement, regarding per beneficiary premiums, to employers and related persons if it has information indicating they remain in business. This is not required by the Coal Act as a prerequisite to a last signatory operator's liability.

person status to the Plan although it was asked.  522 U.S. at 198.  JA

151, 192-202 .[3]

The Coal Act does not direct the Plan to the requirements of 29

U.S.C. § 1399 for calculation of premiums or any other reason.  For this

reason, the district court properly found laches did not apply and that

the Plan's claim for delinquent contributions from February 1, 2000

through March 15, 2012, was not barred by the statute of limitations

because a new cause of action for which a new statute of limitations

period arose with each new payment Bibeau did not make.  JA 216-218,

225-226.

**D.  The elements of a laches defense are not met by the facts of this case.**

If this Court were to find that laches should have been a defense

available in this case, Bibeau has failed to demonstrate the necessary

elements of the defense.  The Supreme Court has held that "Laches

---

[3] Bibeau's invocation of the statute of limitations as a defense in the district court tacitly acknowledges this point.  JA 16.  The ability to recover each monthly payment is abated as the six year statute of limitations applies to each.  Bibeau has already received a reduction of the claim against it for the period February 15, 1993 to January 31, 2000.  JA 216-217, 226.  This is the sole relief contemplated by Congress in providing a six year statute of limitations in the Coal Act.  Despite Bibeau's arguments, there is no further remedy available.

requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. U.S.*, 365 U.S. 265, 282 (1961). These elements are not found here.

### 1. The length of time it took the Plan to discover Bibeau was a related person to Valley Services was reasonable under the circumstances.

Valley Services mined coal in Wyoming County, WV. JA 138. On April 24, 1978, it signed the 1978 NBCWA ("wage agreement or NBCWA"). *Id.* The Appendix and the signature page of the wage agreement list O.L. Bibeau as the president of Valley Services. *Id.* Neither page lists Mr. Bibeau as the owner. It is often the case that the owner of a company may not be the same person listed as the president. There can be multiple owners of a company, which information, as in this case, may not be revealed to the Plan. The address listed on both of the preceding documents for Valley Services was 216 Red School House Road, Spring Valley, NY 10977. *Id.*

In May 1980, the UMWA 1974 Benefit Trust (the collectively bargained health benefit plan that, at the time, provided benefits to retirees of out-of-business employers, similar to those now administered

by the UMWA 1992 Plan) sent a letter to Valley Services requesting that it furnish specific information to the Plan regarding its business activities. JA 110. Ms. (Bibeau) Kilbourne, in her capacity as vice president of Valley Services, completed the form provided, in which she acknowledged that Valley Services was no longer in business as of November 9, 1979, and that as such the 1974 Benefit Plan would provide health benefits to eligible former employees of Valley Services. *Id.* Ms. (Bibeau) Kilbourne's response did not disclose the existence of Bibeau Construction Company. *Id.*

While the Plan knew that Mr. Marcum was enrolled in the Plan in April 1995 and that Valley Services, his last signatory employer, had been out of business since November 1979, it did not know of the existence of Bibeau or that it was a related person. The Plan did not have any information as to who were the owners of Valley Services. It knew only that Mr. Bibeau was the president, Ms. (Bibeau) Kilbourne was the vice-president, and that the company ceased operations in November 1979. Indeed, it had no reason to believe that Valley Services had any related persons as defined in the Coal Act, as many small coal industry operators were stand-alone entities operating as

22

sole proprietorships or privately held corporations. Certainly the listing of a New York phone number was not an indication of the company's having such a related person.

Because Valley Services was out of business and could not pay premiums for Mr. Marcum's health benefits, in February 2001, the Plan did, in due course using its limited resources, undertake an investigation of public records to determine the existence, if any, of a related person to Valley Services. JA 145, 147. Contrary to Bibeau's assertion, it was not "simple" to determine its status as a related person to Valley Services. In a memo dated February 2001, the Plan summarized its research of public corporate records and records from the reference books provided to the Plan by the Mine Safety and Health Administration (MSHA). JA 147. At that time MSHA did not have its records available online.

Of note, the Plan called the West Virginia Secretary of State and was advised that Valley Services was an Ohio corporation that was licensed to do business in West Virginia, and that it had been dissolved in 1982. JA 147. A search of property records in New York associated Mr. Bibeau with a parcel of land with an address of 231 S. Middletown

Road, Nanuet, NY 10954, as well as a property with the mailing

address of 386 ST RTE 302 Pine Bush, NY 12566.  JA 149-150.  Neither

of these records listed Bibeau Construction as owning these properties

or associated the company in any way with those addresses.  Based on

this information, the Plan did not identify any potential related

companies to Valley Services.  JA 147.

As the above information was inconclusive, in December 2004, the

Plan renewed its research of public records in an effort to identify a

potentially related company to Valley Services.  JA 145.  A record from

the New York Secretary of State, found on the internet, associated Mr.

Bibeau with Bibeau Construction Co., Inc., an active company that was

incorporated in 1967.  JA 192.  Mr. Bibeau was listed as the chairman

or chief executive officer, but no information regarding the actual

ownership of the company was listed.  This document was consistent

with a listing obtained via the internet that also listed Mr. Bibeau as an

Officer or Director of Bibeau Construction Co., Inc.  JA 193.  However,

again, no actual ownership information was listed.  MSHA at this time

had an online database which was reviewed for information regarding

Valley Services.  The records that were obtained from the MSHA

internet site regarding Valleys Services, listed Bibeau Construction as the "Controlling Company." JA 157.

The Coal Act mandates that any related person to Valley Services is jointly and severally liable for the premium obligation and must pay premiums to the Plan. 26 U.S.C. § 9712(d)(4). A related person is defined by the Coal Act Section 9701, as being "a member of the controlled group of corporations (within the meaning of section 52(a) [26 USCS § 52(a) which includes such signatory operator." 26 U.S.C. § 9701(c)(2)(A)(i). Section 52(a) of the Internal Revenue Code, 26 U.S.C. § 52(a), provides that "the term 'controlled group of corporations' has the meaning given to such term by section 1563(a). . . ." This definition requires more than 50 percent stock ownership of controlled group members by the same five or fewer person or persons. 26 U.S.C. § 1563(a)(2).

Even after renewed research, it was unclear to the Plan that  Bibeau was a related person, because the Plan did not have needed information as to who owned Bibeau, and the records located by the Plan from the Ohio Secretary of State did not list Mr. Bibeau in any capacity. JA 198-199. It was possible that Bibeau and Valley Services had multiple

owners and the ownership structure did not meet the definition of a

controlled group.  The Plan did not know if other individuals or

companies owned stock shares of either company.  Likewise, the records

obtained from the West Virginia Secretary of State's internet site did

not list Mr. Bibeau in Valley Services corporate records, nor do the

records reflect any New York mailing addresses, only a mailing address

in Ohio.  JA 41-50, 201-202.

Based on the additional documents reviewed in 2004, the Plan then

believed that there was a sufficient likelihood that Bibeau might be a

related person to Valley Services, and accordingly it sent a demand

letter to Bibeau on December 6, 2004 at the Pine Bush and Nanuet, NY

addresses.  JA 66-68.  Because Bibeau's related person status was still

uncertain, the demand letter contained a qualification requesting that

Bibeau provide the Plan with any information that it might have that

demonstrated that it was not a related person to Valley Services.  JA

67.  At the time it received the letter, Bibeau had ownership

information within its possession and knew that it was a related person

to Valley Services, and as such shared joint and several liability for

Valley Services Coal Act debts.  Bibeau made the conscious decision not

to provide relevant ownership information at that time and not to pay the delinquent contributions over the course of the 2005 calendar year and thereafter.

Bibeau even denied, despite being in possession of corporate records that eventually proved otherwise, that it was a related person in its Answer to the Complaint.  JA 15.  These corporate records were not made available to the Plan until the discovery phase of the litigation which occurred in April 2007.  JA 35-48, 79-89.  Bibeau is a privately held company whose records are not available generally to the public, the Plan, or anyone else, absent Bibeau's cooperation.  It was Bibeau's legal responsibility to review its records and comply with its statutory liability and it failed to do so.

Bibeau contends that information regarding its legal relationship to Valley Services was just a telephone call away as early as 1995.  Given Bibeau's failure to acknowledge its corporate pedigree for many years until it was forced to do so in discovery, it is unlikely that the Plan would have been provided with the information needed to make the related person connection if it had called the phone number listed on the Appendix to the 1978 NBCWA in April 1995.  At all times since the

27

enactment of the Coal Act, Bibeau possessed the information that conclusively showed that it was a related person to Valley Services and yet it did not notify the Plan.  Further, Bibeau failed to acknowledge its common ownership with Valley Services, when the Plan raised the question directly and repeatedly in 2004, 2005 and 2006.  Thus, the argument that Bibeau would have volunteered this information in 1995, if the Plan had called is not worth considering.  The record shows that the Plan's investigation into potentially related companies was reasonable.

### 2.  Bibeau was not prejudiced by the Plan's filing of the lawsuit and collection of premiums back to February 2000.

Even if laches applies, because there was no unreasonable delay on the part of the Plan, the question of prejudice should not be considered.  Nonetheless, there was no prejudice to Bibeau.

The Plan provided retroactive coverage for Mr. Marcum dating back to 1993 as the Coal Act requires.  JA 122.  To the extent there has been any financial disadvantage by the delay in bringing this action, the Plan has had to bear that cost in the form of a recovery reduced by approximately seven years.  Bibeau effectively obtained relief from paying the statutory premiums until the Plan discovered its

28

relationship to Valley Services and filed this suit. To date, Bibeau has

failed to pay any of the amounts for which it must admit that it is

liable, save for its implausible laches defense. Bibeau's dissatisfaction

with the Coal Act does not constitute the showing of prejudice that

would be required if a laches defense were available in this matter.

### a. The Plan's actions did not prejudice Bibeau with regard to the disability determination that rendered the beneficiary eligible for the Plan.

The timing of the Plan's suit to collect delinquent health care

premiums has not prejudiced Bibeau with respect to Mr. Marcum's

disability award. Bibeau speculates about the possible actions it might

have taken if it had known about the claim sooner. Significantly,

Bibeau does not assert there was a witness, now lost, or that there was

a record, now missing, that has any particular bearing on Mr. Marcum's

disability. Instead it asserts that there might have been an opportunity

and incentive to challenge the disability determination.[4] This

---

[4] Bibeau cites *McCoy v. Holland,* 364 F.3d 166 (4th Cir. 2004), in its brief to illustrate the possibility that causal link questions may be difficult to decide. It should be noted that the Fourth Circuit, the Court of Appeals that has most often interpreted the 1974 Pension Plan's disability rules, has held that such a disability may arise years after the mine accident occurred, when the miner continued to work after the accident, and despite other intervening contributing injury, provided that there is

29

contention is mere speculation.[5]

The 1978 NBCWA, which Valley Services signed, provided for a disability pension for miners who become permanently and totally disabled as a result of a mine accident, and it further provided that the last signatory operator to employ such a disability pensioner would be responsible for his and his dependent's life-time health benefits.  JA 120.  In accordance with the eligibility requirements set forth in the Coal Act, Mr. Marcum was eligible to receive health benefits from the Plan.  JA 122.

While this court need not decide the question of possible prejudice to Bibeau's hypothetical challenge to Mr. Marcum's disability determination, there is authority that would hold that Bibeau would lack a legal right to make such a challenge in any event.  *See Shrader v. Harman Mining Corp,* 961 F. Supp. 137, 142 (W.D. W.Va. 1997)(holding

---

medical evidence that the mine accident was a substantial cause. *Harris v. Holland*, 32 EBC 2969 (4th Cir. 2004).  Both *McCoy* and *Harris* illustrate the fact that the 1974 Pension Plan denies disability pensions when it believes it appropriate to do so.
[5] Bibeau cites a congressional hearing describing abuse of Social Security disability programs.  Bibeau's Brief at 37.  There is no evidence whatsoever that this abuse had anything to do with Mr. Marcum.  The record supports the actions of the Plan.

"that allowing an employer to challenge the eligibility determination of the trustees would be inconsistent with the statutory provisions of ERISA"); *relying on Massachusetts Mutual Life Ins. Co., et al. v. Russell*, 473 U.S. 134 (1985). Article V of the Plan in the instant matter provides that "the Trustees shall have full and exclusive authority and discretion to determine all questions of coverage and eligibility, including all factual determinations. . . ." JA 83.

The 1978 NBCWA states that "The Trustees shall promptly investigate and determine the eligibility or ineligibility of any beneficiary whose right to receive benefits from the Trusts has been challenged by . . . any Employer." JA 119. Requesting an investigation regarding Mr. Marcum's eligibility is the remedy provided to Bibeau. Significantly, the NBCWA leaves the determination of the investigation to the trustees and does not provide a right for the employer to challenge the determination. *Id.*

### b. The Coal Act's retroactive nature was intended by Congress.

The district court correctly interpreted the Coal Act and found that Bibeau was responsible to pay health care premiums to the Plan that accrued on February 1, 2000 and ongoing. JA 226. Bibeau's liability to

31

the Plan was the result of Congress's enactment of the Coal Act in

1992.  While Bibeau finally admitted to being a related person to

Valley Services, it insists that because it never employed Mr. Marcum

it should not have to pay premiums to the Plan.  *See* Bibeau's Brief at

33.  The Coal Act does not require that Bibeau have employed Mr.

Marcum in order for it to be responsible for these payments.  Section

9701(c)(2)(A)(i) of the Coal Act, 26 U.S.C. § 9701(c)(2)(A)(i), states that

a person shall be deemed a "related person" to a signatory company if

that person is a "member of the controlled group of corporations (within

the meaning of section 52(a) [26 U.S.C. § 52(a)]) which includes such

signatory operator."

July 20, 1992, is the date upon which "related persons" are to be

determined according to Section 9701(c)(2)(B) of the Coal Act, 26 U.S.C.

§ 9701(c)(2)(B).  If the signatory operator is not in business as of July

20, 1992, "related persons" "shall be determined as of the time

immediately before such operator ceased to be in business."  *Id.*  In this

case this date was in 1979, when Valley Services ceased operations and

Bibeau was in business at that time and continues to be in business.

Likewise, the Coal Act does not require Bibeau to have filed a common

tax return with Valley Services or to have benefited from the

operations of Valley Services.

## II. The District Court Properly Found that the Plan is Entitled to Statutory Interest and Liquidated Damages for the Entire Period for which the Plan Was Awarded Delinquent Premiums.

### A. The Plan is entitled to interest for periods prior to December 6, 2004.

In accordance with the statutory requirements of Section 502(g)(2) of

ERISA, the district court properly ordered Bibeau to pay to the Plan

interest owed on the monthly per-beneficiary premiums for the period

February 15, 2000 through March 15, 2012. 29 U.S.C. § 1132(g)(2).  JA

252.

Section 515 of ERISA, 29 U.S.C. § 1145, requires employers who are

obligated to make contributions to a multiemployer plan to make such

contributions in accordance with the terms of the plan or collectively

bargained agreement.  The statute determines the period for which

interest will be awarded.  "In any action under this title by a fiduciary

for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145] in

which a judgment in favor of the plan is awarded, the court shall award

the plan (A) the unpaid contributions (B) interest on the unpaid contributions. . . ." 29 U.S.C. § 1132 (g)(2)(A)-(B).

Bibeau has failed to make contributions to the Plan. The Plan is entitled to interest on those unpaid contributions. This is not a matter of the district court's interpretation of Section 1132(g)(2), as Bibeau suggests. *See* Bibeau's Brief at 40-41. The award of interest on delinquent contributions and liquidated damages is mandatory and mechanically applied to the period for which contributions are awarded in any successful action based on unpaid contributions. *Connors v. Beth Energy Mines, Inc.*, 920 F.2d 205, 212 (3rd Cir. 1990). The Court in *Beth Energy Mines*, held that "the statutory language is clear; the award of damages and interest is mandatory." *Id.* (*citing United Retail and Wholesale Employees Pension Fund v. Yahn and McDonnell, Inc.*, 787 F.2d 128, 134-135 (3rd Cir. 1986)). Thus, the award of interest and liquidated damages is not discretionary and there is no matching of the interest awarded to a demand date.

Bibeau contends that it was unaware of its liability and therefore should only be charged with interest for the period after it received a demand from the Plan. The Coal Act makes related persons jointly and

34

severally liable for the obligations of signatory operators without exceptions or conditions other than being a related person.  No inquiry is required into whether Bibeau realized the extent of their liability.

Accordingly, Bibeau's citation of *Huber v. Casablanca Industries, Inc.*, 916 F.2d 85 (3rd Cir. 1990), in support of its position that the Plan should not be awarded interest for periods prior to its first demand on December 6, 2004 has no applicability to the instant case.  The issue in *Huber* was whether first year and/or pre-demand interest was payable under a different statutory provision than the one at issue here, and how to amortize the resulting principal and interest payments under the withdrawal liability statute.  A close reading of *Huber* reveals that the "interest," to which Bibeau refers, is not the same type of "interest" contemplated by 29 U.S.C. § 1132(g)(2).  The *Huber* "interest" is derived from 29 U.S.C. § 1399(c)(1).  *Id.* at 95.  "Interest" pursuant to 29 U.S.C. § 1399(c)(1), becomes part of the underlying calculations of the withdrawal liability that is owed by the employer.  *Id.* at 95-96.  In contrast, the "interest" that the Plan is seeking in this case, is that interest as prescribed by 29 U.S.C. § 1132(g)(2)(B), "interest on the unpaid contributions."  *Huber* is not legally analogous to this case.

35

## B. The Plan is entitled to liquidated damages on all unpaid contributions.

The district court properly awarded liquidated damages to the Plan. JA 252.  Section 502(g)(C) of ERISA provides that the court shall, in addition to awarding interest, award the plan an amount equal to the greater of (i) the interest on the unpaid premiums or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the unpaid contributions.  29 U.S.C. § 1132(g)(2)(C)(i)-(ii).  Article XI(7) of the Plan's Agreement and Declaration of Trust provides for the assessment of liquidated damages in the amount of twenty percent of the amount owed or the amount of the interest charged, whichever is the greater amount.  JA 93.

In *ITP-MEBA/NMU Funds v. United International Investigative Services*, 13 EBC 2538 (D.D.C. 1991), the court found that "Courts have unanimously held that liquidated damages are not available under section 1132(g)(2)(C) for delinquent contributions which are paid prior to instigation of a legal action for such damages." *ITP* at 2541 (*internal citations omitted*).  Accordingly, since litigation had not been initiated while efforts to gain voluntary payment were made, the Plan's demand was in accordance with the statute.  Nevertheless, the Plan did warn

36

Bibeau in the December 2004 letter that if no payment was made they could be subject to liquidated damages.  JA 66.  Bibeau's response to this notification was to deny their liability and to make no payments.

Just as the award of interest is mandatory, so is the award of liquidated damages.  The language of this provision is unambiguous.  The amount that the court determines is owed to the plan shall be subject to both interest and liquidated damages.

## CONCLUSION

For the foregoing reasons, the Plan respectfully submits that this Court should affirm the district court's grant of summary judgment to the Plan and the district court's award of interest and liquidated damages on all unpaid contributions.

## STATEMENT REGARDING ORAL ARGUMENT

The Plan submits that this case does not warrant oral argument. *See* F.R.A.P. 34. The dispositive issues in this case have been authoritatively decided by the United States Supreme Court.  Further the facts and the legal arguments have been adequately presented in

the briefs and record and the decisional process would not be

significantly aided by oral argument.

Respectfully submitted,

David W. Allen, DC Bar #81638
General Counsel
Larry D. Newsome, DC Bar #254763
Associate General Counsel

*/s/ Kathleen B. Burns*
Kathleen B. Burns, DC Bar #492460
Assistant General Counsel
UMWA Health & Retirement Funds
Office of General Counsel
2121 K Street, N.W.
Washington, DC 20037
Phone: (202) 521-2233
kburns@umwafunds.org

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X]  this brief contains [ 8,125 ] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]  this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]  this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Century Schoolbook 14 point font, *or*

[ ]  this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

*/s/ Kathleen B. Burns*
Kathleen B. Burns
Attorney for Appellees, Michael H. Holland, et al., as Trustees for the UMWA 1992 Benefit Plan

Dated: January 21, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on the 21st day of January 2014, I electronically

filed the foregoing Brief of Appellees with the Clerk of the Court using

the CM/ECF system, which will send an electronic notification of such

filing to the following:

> John R. Woodrum, Esquire
> Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
> 1909 K Street, N.W., Suite 1000
> Washington, D.C.  20006
> Telephone:  (202) 887-0800
> john.woodrum@odnss.com
> Attorney for Appellant, Bibeau Construction Company,
> Inc.

I further certify that eight paper copies of the Brief of Appellees have

been delivered by hand to the Clerk of Court to be filed.

> */s/ Kathleen B. Burns*
> Kathleen B. Burns
> Attorney for Appellees, Michael H. Holland,
> et al., as Trustees for the UMWA 1992
> Benefit Plan